UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>　　　　　Plaintiff,<br><br>　　v.<br><br>DAMADRE TERXIDOR,<br>　　　　　Defendant. | Case No. 22-cr-00081-VC-1<br><br>**ORDER DENYING MOTION TO SUPPRESS**<br>Re: Dkt. No. 31 |

　　　　The motion to suppress is denied. While the officers' reasonable suspicion was partially based on a mistake of fact, that mistake was reasonable. *See United States v. Hartz*, 458 F.3d 1011, 1017–18 (9th Cir. 2006). Officers Bortmas and Prasadi encountered Terxidor's Hyundai Santa Fe at around 10:00 p.m. in the Tenderloin District of San Francisco. Tr. at 11. The Tenderloin is widely known as a high-crime neighborhood, and the incidence of crimes such as vehicle theft in the area is even higher at night. Tr. at 8–9. At the evidentiary hearing held on July 15, 2022, Officer Bortmas testified that Terxidor was driving eastbound on Golden Gate Avenue towards Larkin Street and Hyde Street, which are especially crime-heavy portions of the Tenderloin. Tr. at 24.

　　　　Terxidor's vehicle caught the officers' eyes because it displayed an unusual paper license plate. At the evidentiary hearing, the officers credibly testified that they could not see a state of issuance on the license plate before they stopped the vehicle because the font was unusually small, and it was dark out. *See, e.g.*, Tr. at 15–16. Their testimony is particularly credible given that the state of issuance is not visible even on a photograph of the license plate taken under a spotlight and from only a few feet away. Exh. 1; *see* Tr. at 12 (Bortmas testifying that Terxidor's

vehicle was in a different lane about 20 feet away at the time the officers encountered it and tried to ascertain the state of issuance).

Prasadi instructed Bortmas to run the plate number in the patrol vehicle's computer. Bortmas entered the full license plate number into the California Law Enforcement Telecommunication System ("CLETS"), which returned an expired registration for a different vehicle: a Mercedes rather than a Hyundai. Based on the unusual appearance of the plate, the return for a different vehicle with an expired registration, the neighborhood and direction in which Terxidor was driving, and the time of night, the officers suspected that the plate was a fake and/or that the car was stolen. The officers also observed that Terxidor was driving faster than regular traffic and that he turned down the loud music he had been playing upon seeing a marked patrol vehicle nearby. Tr. at 96–97. There is no question that these facts, if correct, would be more than sufficient to support reasonable suspicion of criminal activity.

It turns out that the officers were mistaken about some of these facts. The Hyundai's license plate number was not actually associated with a Mercedes with an expired registration. It was a temporary out-of-state license plate associated with the Hyundai to which it was affixed. It consisted of eight digits, while California plates consist of only seven digits. Thus, when Bortmas ran the eight-digit number in the California database, the computer cut off the last digit, returning the erroneous result.

But it was not unreasonable for Bortmas and Prasadi to fail to notice that the plate number was a single digit longer than California plate numbers. Nor was it unreasonable for them to not notice—once the result was returned—that the plate number displayed on the computer was off by a single digit. This is especially so given that the computer did not alert the officers to any error with the entry. Finally, it was not unreasonable for the officers to assume that the plate number on the car was a California plate number. Both officers testified at length that out-of-state plates (especially temporary out-of-state plates) are significantly less common in the Tenderloin than California plates. Perhaps an officer must be on alert for out-of-state plates in a location such as the California side of Lake Tahoe, but it is not unreasonable to

automatically assume that a plate is from California when it is encountered in San Francisco.

At the evidentiary hearing, testimony was elicited regarding an all-state database that the officers apparently had available to them on the day of the stop, as an alternative to the California database. However, both officers credibly testified that they did not know about the all-state functionality on the day of the stop and that they only became aware of it the morning of the evidentiary hearing when the government brought it to their attention. This may well reflect a deficiency in the officers' training. But inadequate training can weigh in favor of finding that a factual mistake was reasonable if the mistake follows from the deficiency in the training. *See Torres v. City of Madera*, 524 F.3d 1053, 1056–57 (9th Cir. 2008).

In an effort to demonstrate that the officers *were* aware of the all-state functionality on the day of the stop, the defense offered the sworn declaration of Officer David Garcia, who once trained SFPD recruits on using their mobile data terminals. Dkt. No. 63-1; *see also* Dkt. No. 66. Garcia attested that, as part of his training, he would instruct officers on the existence and use of the all-state database. Dkt. No. 63-1 at 3. But Garcia only trained officers from 2011 to 2014, and Officers Bortmas and Prasadi did not begin their training until 2018. *Id.*; Tr. at 8, 93. Garcia attested that he has no knowledge or information about whether officer training after 2014 continued to include instruction on the all-state database. Dkt. No. 63-1 at 3.

Testimony was also elicited regarding dispatch's ability—separate from any computer functionality in the vehicle—to conduct an all-state search. On that basis, Terxidor suggests it was unreasonable for the officers to not request an all-state search from dispatch. But, again, Prasadi testified that he didn't know dispatch had that ability on the day of the stop—any more than he knew *he* had that ability in the patrol car.

Bortmas's testimony on this point is less clear. When asked, "[w]hen you don't know the plate's state of issuance, dispatch has the ability to do the all-state search; correct?," Bortmas replied, "I believe they do." Tr. at 72. But Bortmas had just been asked about the all-state functionality in the vehicle, and he had testified that he had just become aware of it for the first time that morning. Tr. at 70. Thus, by "I believe they do," it's unclear whether Bortmas meant

3

that he has always known (and knew at the time of the stop) that dispatch has the ability to perform all-state searches, or whether he was merely reiterating his earlier testimony that he was *now* (as of that morning) aware of that fact.

In any event, the difference is immaterial. It certainly would have been diligent to call dispatch, if in fact Bortmas knew dispatch had the ability to perform all-state searches. But that does not mean that failing to do so was unreasonable. Moreover, Officer Garcia, whose declaration Terxidor relies on, attested that while he used to train officers on the all-state database, he nevertheless "trained them to use the command line screen [which defaults to the California database] as their primary search engine." Dkt. No. 66 at 5. He attested further that, "[i]n [his] experience, using the command line screen is reasonable even if the officers had technical access to the all-state database." *Id.*

Under these circumstances, the officers' mistaken belief that Terxidor's plate was a California plate associated with a Mercedes with an expired registration was objectively reasonable. Because the officers had reasonable suspicion to conduct the traffic stop that led to the discovery of the firearm at issue, the motion to suppress is denied.[1]

**IT IS SO ORDERED.**

Dated: October 31, 2022

VINCE CHHABRIA
United States District Judge

---

[1] The government also argues that the officers would have inevitably discovered the firearm because the Hyundai's registration was also expired. The Court disagrees and would grant the motion to suppress if the officers' mistake weren't reasonable. Reasonable suspicion may not have developed if not for the officers' mistake. Since the officers couldn't see the state of issuance on the plate and did not know about the all-state database, they had 50 options to choose from. There is no reason to think they would have inevitably selected Georgia. Even if they did, they would have had reasonable suspicion only of a 13-day expired registration, not of a stolen vehicle or a forged plate. Even crediting the officers' testimony that they would have nonetheless exercised their discretion to stop the vehicle, they may not have exercised their discretion to search the vehicle upon learning of Terxidor's parole status, because a recently expired registration would have sounded fewer alarms than suspicions of vehicle theft or plate forgery. The government's argument is too speculative, and the chain of events it relies on too attenuated, to suggest anything close to inevitability.